UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Joanne C. Evarts,
    Appellant

    v.                                         Case No. 18-cv-1224-SM
                                             Opinion No. 2019 DNH 071
U.S. Bank Trust Nat'l Ass'n,
as Trustee of Cabana Series III Trust,
    Defendant

**O R D E R**

In July of 2016, Joanne Evarts filed a petition under chapter 13 of the bankruptcy code. Subsequently, U.S. Bank National Trust Association, as Trustee of Cabana Series III Trust ("U.S. Bank"), filed a proof of claim, representing that it had a claim, secured by a mortgage deed to Evarts' home, in the total amount of $237,948.91. Evarts objected. Following an evidentiary hearing, the bankruptcy court issued a written decision, in which it concluded that Evarts failed to establish grounds for disallowing U.S. Bank's claim. According, it overruled her objection. Evarts appeals that decision.

For the reasons discussed, the decision of the bankruptcy court dated December 12, 2018, is affirmed.

## Background

Evarts' challenges to U.S. Bank's proof of claim turn largely on the enforceability of a loan modification agreement that governs the terms of her relationship with U.S. Bank. The relevant background is fully set forth in the bankruptcy court's thorough and thoughtful opinion. See In re Evarts, No. BR 16-11056-BAH, 2018 WL 6584242, at *1-3 (Bankr. D.N.H. Dec. 12, 2018). It need not be recounted in detail. But, because that factual background is somewhat confusing, a brief restatement of those facts necessary to explain the basis for Evarts' claims is in order.

In June of 2002, Evarts and her (now deceased) husband obtained a loan in the original principal amount of $215,000. That loan was secured by a mortgage deed to the couple's home in Cornish, New Hampshire. Through a series of assignments, U.S. Bank currently holds both the promissory note and the mortgage deed. So, to minimize confusion, the court will refer to U.S. Bank, as well as all of its various predecessors in interest, collectively, as simply "U.S. Bank."

In early 2010, (while in the midst of an earlier chapter 13 bankruptcy proceeding) Evarts and her husband owed U.S. Bank approximately $200,000 on the loan. They were, however, having

difficulty making their monthly payments. In fact, Evarts and her husband purposefully stopped making payments on the loan to build an arrearage sufficient to qualify for assistance under the Home Affordable Modification Program ("HAMP").

After failing to make payments on the loan for more than six months, the Evarts began working with U.S. Bank to obtain a HAMP loan modification agreement that would lower their monthly loan repayment obligations. Unfortunately, two distinctly different versions of that loan modification agreement emerged from the parties' negotiations. The first was signed only by Evarts and her husband (the "Draft Agreement"). It is undisputed that U.S. Bank never signed the Draft Agreement. According to U.S. Bank's unrebutted evidence, it discovered an error in the Draft Agreement and notified Evarts. It then corrected the error and submitted a revised agreement to Evarts and her husband, which both of them executed. U.S. Bank then signed the revised agreement (the "Executed Agreement"). Evarts says the Executed Agreement is unenforceable and must be replaced with the original, Draft Agreement.

The most significant difference between the two versions of the loan modification agreement is this: although both versions call for Evarts to make the same monthly payments on her loan

3

($1,484.31), the Executed Agreement calls for Evarts to pay approximately $54,000 more than required by the Draft Agreement. Specifically, while all agree that the outstanding principal amount on Evarts' loan was approximately $200,000 when the parties began negotiating the loan modification,[1] the Draft Agreement erroneously represents that Evarts and her husband owed U.S. Bank only $181,655.60 - a sum referenced in the Draft Agreement as the "New Principal Balance," and upon which her monthly payments would be calculated going forward.  See Draft Agreement (document no. 4) at 8 of 26.  The remaining principal of more than $18,000 that Evarts acknowledges she owed was not mentioned in the Draft Agreement (and, critically, it was not expressly forgiven).  That, one may logically infer, is the error U.S. Bank identified in the Draft Agreement.

The Executed Agreement, on the other hand, employed that same $181,665.60 to calculate Evarts' monthly payments, but referenced that sum as the "Interest Bearing Principal Balance." The Executed Agreement goes on to represent that Evarts' total outstanding loan amount - the "New Principal Balance" - was $235,932.74.  That total indebtedness was comprised of two

---

[1]  As discussed more fully below, Evarts also owed roughly $19,000 in unpaid interest, fees, and escrow payments - all of which accrued during the period that Evarts had stopped making payments on the loan.

4

components: first, the "Interest Bearing Principal Balance" of $181,665.60; and, second, a "Deferred Principal Balance" of $54,267.14, on which no interest would be paid. Id. at 17 of 26. The Deferred Principal Balance would become due and payable upon Evarts' sale or transfer of her home, or the date on which she made her final payment on the Interest Bearing Principal Balance (or, of course, in the event of a "default," as defined in the underlying promissory note). In other words, the roughly $54,000 Deferred Principal Balance became a "balloon" payment, due when the loan matured in 40 years.

The precise terms at issue are set forth in Section 3 of the Executed Agreement:

> The modified principal balance of my Note <u>will include all amounts and arrearages</u> that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$235,932.74** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.
>
> **$54,267.14** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will

5

>     not pay interest or make monthly payments on this
>     amount.  The New Principal Balance less the Deferred
>     Principal Balance shall be referred to as the
>     "Interest Bearing Principal Balance" and this amount
>     is **$181,665.60.**

Executed Loan Agreement at 3 (document no. 4 at 17 of 26) (emphasis supplied).

Evarts questions the origin of the roughly $54,000 in "Deferred Principal." But, the evidence is clear that it arose from Evarts' total arrearage of $37,585.70 when the Executed Agreement was negotiated.[2] That $37,585.70 appears to have been capitalized over the loan's 40-year term to arrive at the roughly $54,000 deferred balloon payment. See HAMP Modification Approval Form - Loan Data (document no. 15), Exhibit I, at 14 of 49 (showing "Amount to be Capitalized: $37,585.70"). See also Testimony of Lacey Sokolowski, Hearing Transcript (document no. 9) at 100-03.

---

[2] When Evarts' "Interest Bearing Principal Balance" was reduced from roughly $200,000 to approximately $182,000, that left about $18,000 in principal unaccounted for. Moreover, because Evarts had stopped making monthly payments on the loan, she had accrued additional obligations to U.S. Bank totaling roughly $19,000 (interest from the many missed monthly payments, unpaid escrow payments, late fees, etc.). Together, those sums (i.e., the balance of principal owed plus accrued interest and fees) totaled $37,585.70.

6

Evarts acknowledges that the portion of her debt on which interest (and monthly payments) would be calculated was reduced from approximately $200,000 to $181,665.60. See Appellant's Brief (document no. 11) at 14. She appears, however, to mistakenly think that the difference between those sums - roughly $18,000 - was forgiven. It was not. Instead, it (along with unpaid interest and fees) was capitalized over the loan's 40-year term and became the "Deferred Principal Balance."

Beyond questioning the origin of the deferred payment of roughly $54,000, Evarts seems to assert that the Executed Agreement is not (or should not be) enforceable against her. In support of that argument, she claims she never received or reviewed the amended terms of the Executed Agreement and was, therefore, completely unaware of the roughly $54,000 in additional payments called for under the Executed Agreement. Indeed, she testified before the bankruptcy court that U.S. Bank assured her that all the material terms of the Draft Agreement remained unchanged in the Executed Agreement. Moreover, she claims U.S. Bank never sent her the full version of the Executed Agreement; instead, says Evarts, it sent her only the signature page of that document for execution.

The bankruptcy court concluded otherwise and found that Evarts and her husband received, and had the opportunity to review, the entire Executed Agreement (including the provisions regarding the $54,000 deferred payment) prior to signing it. Consequently, it concluded that the Executed Agreement was enforceable and governed the terms of the parties' relationship. It then held that, "the Deferred Principal Balance remains collectible in accordance with the terms of the [Executed Agreement] and is a proper component of U.S. Bank's total claim in POC 2-1 [its proof of claim]." In re Evarts, 2018 WL 6584242, at *6.

In her appeal, Evarts challenges that finding and persists in claiming that U.S. Bank improperly included the approximately $54,000 balloon payment of the "Deferred Principal Balance" in its proof of claim. She also claims that U.S. Bank overcharged her for home insurance premiums totaling approximately $8,400, which she says had already been paid from her escrow account. Finally, she asserts that U.S. Bank mishandled her escrow account and wrongfully charged her more than the bank actually incurred for legitimate expenses.

As noted above, the bankruptcy court considered, and rejected, Evarts' claim that she was not bound by the terms of

the Executed Agreement.  In re Evarts, 2018 WL 6584242, at *3. The bankruptcy court went on to reject Evarts' claim that U.S. Bank's proof of claim erroneously included amounts for "duplicate or forced placed insurance," id. at *7, as well as her assertion that U.S. Bank had overcharged her escrow account, id. at *8.  Accordingly, the bankruptcy court concluded that "the Debtor has not established grounds for disallowing U.S. Bank's claim pursuant to § 502(b)."  Id.  The court overruled Evarts' objection to U.S. Bank's proof of claim and allowed that claim "in the total amount of $237,948.91, with a prepetition mortgage arrearage claim of $24,449.62."  Id.  This appeal ensued.

**Standard of Review**

This is a "core" proceeding under 28 U.S.C. § 157(b)(2). See In re Evarts, 2018 WL 6584242, at *1.  Accordingly, this court has jurisdiction to hear Evarts' appeal of the bankruptcy court's decision.  28 U.S.C. § 158(a).  The bankruptcy court's conclusions of law are reviewed de novo, but its factual findings are entitled to deference and are reviewed for clear error.  See Sheridan v. Michels (In re Sheridan), 362 F.3d 96, 100 (1st Cir. 2004); White v. Gordon, 558 B.R. 15, 18 (D.N.H. 2016); Bates v. CitiMortgage, Inc., 550 B.R. 12, 16 (D.N.H.).

9

With regard to U.S. Bank's underlying proof of claim, a "claim filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bank. P. 3001(f). To rebut the prima facie evidence of a proper proof of claim, an objecting party - here, Evarts - must produce "substantial evidence" in opposition. See Juniper Dev. Group v. Kahn (In re Hemmingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993). If the evidence submitted by the objecting party is substantial, the claimant is required to present "evidence to support its claims and bears the burden of proving [those] claims by a preponderance of the evidence." Tracey v. United States (In re Tracey), 394 B.R. 635, 639 (1st Cir. BAP 2008) (citation and internal punctuation omitted).

**Discussion**

I.  The Loan Modification and "Deferred Principal"

After considering the relevant evidence, the bankruptcy court concluded that U.S. Bank had provided Evarts and her husband with a complete copy of the Executed Agreement and that they had the opportunity to read and understand the changes embodied in that agreement prior to signing it. Accordingly, it held that the Executed Agreement was valid and binding upon the parties. Those conclusions are well-supported by the record evidence. Two notable pieces of evidence stand out.

First, well before the events at issue here, in July of 2005, Evarts and her husband filed a Chapter 7 bankruptcy petition which was later converted to Chapter 13. As part of that earlier bankruptcy proceeding, in August of 2011, U.S. Bank filed a proof of claim to which it attached a copy the Executed Agreement, showing a "Deferred Principal Balance" of $54,267.14 and a "New Principal Balance" of $235,932.74. Evarts did not challenge that proof of claim as part of her 2005 bankruptcy case. Nor did she challenge the enforceability of the underlying Executed Agreement.

Additionally, on page 3 of the Executed Agreement there is a handwritten note bearing Evarts' initials: "JCE." See Executed Agreement (document no. 4) at 17 of 26. Evarts' handwritten note strongly suggests that she possessed the entire agreement prior to signing it. At a minimum, that handwritten note demonstrates that Evarts read the contents of page 3. And, on that very page of the agreement, in bold typeface, are statements that the "new principal balance of my Note will be **$235,932.74**" and that "**$54,267.14** of the New Principal Balance shall be deferred (the "Deferred Principal Balance")." Plainly, then, Evarts was (or certainly should have been) aware of the existence of the Deferred Principal Balance of roughly $54,000. Moreover, as the bankruptcy court noted, only two days before

11

Evarts and her husband signed the Executed Agreement, Evarts wrote a letter to U.S. Bank discussing certain aspects of her loan repayment schedule as set forth on page 3 of the Executed Agreement.  See In re Evarts, 2018 WL 6584242, at *3 (reproducing a copy of Evarts' letter).

Based upon that evidence, the bankruptcy court sustainably concluded that:

> the new provisions [of the Executed Agreement] concerning the "Deferred Principal Balance" of $54,267.14 and the "New Principal Balance" of $235,932.74 appear on page 3, just below the Debtor's handwritten notes, making it unlikely that she was unaware until years later that the [Executed Agreement] was capitalizing all of the then-existing contractual mortgage arrearages and deferring their payment until a later date, rather than (as she contends) forgiving the entire amount of the Deferred Principal Balance.  Thus, it would appear that the Debtor did in fact have a copy of the full [Executed Agreement] at the time she and her husband signed it in May 2010.  There is no other explanation in the record for the Debtor's handwritten notes appearing on the very same page of the agreement that contains the Deferred Principal Balance, which Nationstar [U.S. Bank's predecessor] attached as an exhibit to POC 5-2 filed in the Debtor's prior bankruptcy case on August 28, 2011.

In re Evarts, 2018 WL 6584242, at *3.  The bankruptcy court further concluded that:

> the letter that the Debtor sent to [U.S. Bank] in May 2010, along with the signed, annotated and initialed copy of the May Loan Modification Agreement filed with

> the Court in 2011 convinces the Court that the Debtor
> did have the full agreement when she executed the May
> Loan Modification Agreement - or, at the very latest,
> before August 2011, when [U.S. Bank] attached it to
> [its proof of claim in the earlier bankruptcy
> proceeding] — refuting her contention that she was
> unaware of its deferred principal provision until 2015
> or that the mortgagee somehow tricked her into signing
> it.

Id. at *5 (footnotes omitted).

In light of those findings, the bankruptcy court held that, "the Debtor has not met her burden of coming forward with 'substantial evidence' that would rebut U.S. Bank's prima facie case regarding the validity and amount of the Deferred Principal Balance contained in [its proof of claim]." Id. at *6.

Evarts has failed to demonstrate that the bankruptcy court's conclusions were based upon an error of law or that its factual findings are not supported by the record. Parenthetically, the court notes that Evarts is incorrect in asserting that U.S. Bank's spreadsheet showing her payment history incorrectly reflects that she mysteriously incurred the $54,000 in additional debt "in the 14 months [between] January 1, 2009, to March, 2010." Appellant's Brief (document no. 11) at 11. Rather, as explained above, the record shows that when the loan modification was executed, Evarts' arrearage of

13

$37,585.70 was capitalized over the term of the loan and became the Deferred Principal Balance.  And, on July 19, 2016 - the date on which Evarts filed her bankruptcy petition - U.S. Bank made an entry in her account to reflect the <u>total</u> amount due on her loan (recall that, under the loan modification agreement, Evart's monthly payments were calculated on a reduced amount - that is, the "Interest Bearing Principal Balance" of only $181,665.60; the balance of her debt was deferred).  So, upon Evart's filing of the bankruptcy petition, U.S. Bank brought forward the "Deferred Principal Amount" of roughly $54,000, so it could calculate (and report to the bankruptcy court) the <u>total</u> amount Evarts owed on the loan.  <u>See</u> Spreadsheet Attached to Proof of Claim (document no. 6-3) at 10 of 37 (July 19, 2016 entry).

Finally, Evarts' appellate brief might plausibly be read to object to U.S. Bank's inclusion of the entire $54,000 balloon payment in its proof of claim.  That issue warrants brief discussion.  The Executed Agreement requires Evarts to repay "the full Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date [she] sells or transfers an interest in the Property; (ii) the date [she] pays the entire Interest Bearing Principal; or (iii) the new Maturity Date [in 2050]."  Executed Agreement (document

no. 4) at 17 of 26. That provision may (or may not) raise legal or equitable concerns unrelated to the issues presented in this appeal. Specifically, if Evarts were to sell her home next week, the Executed Agreement, by its terms, would obligate her to pay the entire Deferred Principal Balance of more than $54,000. In that context, such a provision might arguably be unenforceable as either unconscionable or usurious, or both. Plainly, it would seem, the drafters of the Executed Agreement did not fully contemplate the consequences of an early payoff of Evarts' loan obligations. The agreement is silent as to any obligation on the part of U.S. Bank to reduce that $54,000 obligation (which is not otherwise payable until 2050) to its present value. But, the bankruptcy court is, no doubt, aware of the issue. And, presumably, it can be taken into account in formulating Evarts' chapter 13 plan.

II. <u>Improper Insurance Charges</u>.

Evarts also asserts that U.S. Bank made various accounting errors with respect to her escrow account and improperly charged her for duplicate, "forced-place insurance" when U.S. Bank had <u>already</u> secured homeowner's insurance covering her home (as it had been doing for several years). <u>See</u> Hearing Transcript (document no. 9) at 69. U.S. Bank's accounting methods, and the various spreadsheets it generated to show how much Evarts owed

15

on the loan are, to the layperson's eye, a convoluted mess.
Indeed, U.S. Bank's own witness conceded that many
(approximately 90) "corrections" were made to Evarts' escrow
account either to address erroneous entries or to reconcile
different accounting methods used by two different entities
(after the loan had been transferred to a new servicer). Id. at
95-97. But, as the bankruptcy court concluded, each of those
errors appears to have been corrected prior to Evarts having
filed her petition in bankruptcy. See In re Evarts, 2018 WL
6584242, at *7. Even Evarts herself was uncertain whether those
allegedly erroneous charges were part of U.S. Bank's proof of
claim. See Id. (noting that Evarts was "unsure that this
purported overcharging is even reflected in U.S. Bank's" proof
of claim) (citing Evart's Objection to Proof of Claim).

After reviewing U.S. Bank's spreadsheets showing all the
entries to Evarts' account, and comparing them to documents on
which Evarts was relying, the bankruptcy court correctly
concluded that Evarts failed to support her claim with
substantial evidence.

> All of the "duplicate" or "forced placed" insurance
> charges predate the itemization attached to POC 2-1
> [U.S. Bank's proof of claim]. U.S. Bank further
> explains that as of October 1, 2013, the itemization
> reflects that the Debtor had a positive $3,350.76 in
> her escrow account; in other words, the Debtor's

> escrow account had $3,350.76 to disburse toward hazard
> insurance premiums and real estate taxes.  Thus, if
> there were overcharging to the extent alleged by the
> Debtor, one would expect the escrow account to have a
> negative balance as of October 1, 2013.

In re Evarts, 2018 WL 6584242, at *7.

Again, Evarts has failed to demonstrate that the bankruptcy court's decision rests on either unsupportable factual conclusions or a mis-application of governing law.

III. Overcharging Escrow Account.

Finally, Evarts asserts that the bankruptcy court erred in failing to recognize that U.S. Bank had overcharged her escrow account by more than $15,000.  This court need not restate the bankruptcy court's analysis.  It is sufficient to note that it reviewed Evart's calculations concerning her escrow account (document 4-5) and compared them to U.S. Bank's calculations, as set forth in its proof of claim (document no. 6-3).  Those documents diverge only as to a single entry, in the amount of $50.  And, based upon Evarts' own calculations, there was a substantial shortfall in her escrow account - indeed, Evarts' own calculations reveal an escrow account deficiency roughly $2,000 more than U.S. Bank claimed on its proof of claim.  In light of that evidence, the bankruptcy court concluded that it

could not find that Evarts "presented 'substantial evidence' that would rebut the prima facie evidence presented in U.S. Bank's claim regarding the outstanding escrow amount due as of the petition date." In re Evarts, 2018 WL 6584242, at *8.

In her appeal, Evarts relies upon the same arguments and supporting documents that she presented to the bankruptcy court. They are not persuasive and she has failed to demonstrate that any material findings of fact made by the bankruptcy court were clearly erroneous.

## Conclusion

For the foregoing reasons, as well as those set forth in U.S. Bank's legal memorandum, the decision of the bankruptcy court overruling Evarts' objection to U.S. Bank's proof of claim is affirmed.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_/s/ Steven J. McAuliffe_
Steven J. McAuliffe
United States District Judge

May 6, 2019

18

cc: Joanne C. Evart, pro se
    Marcus E. Pratt, Esq.
    Geraldine L. Karonis, Esq.